* NORFOLK & W. RY. CO. v. COLLINGS-
WORTH.

No. 5741.

Circuit Court of Appeals, Sixth Circuit.

Oct. 9, 1931.

J. I. Boulger, of Columbus, Ohio (Henry Bannon, of Portsmouth, Ohio, on the brief), for appellant.

R. B. Newcomb, of Cleveland, Ohio (Pugh & Pugh, of Columbus, Ohio, and Newcomb, Newcomb & Nord, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN and HICKS, Circuit Judges, and SIMONS, District Judge.

MOORMAN, Circuit Judge.

The judgment for plaintiff on the first trial of this case was reversed on the ground that the motion for a directed verdict for the defendant should have been sustained. (C. C. A.) 32 F.(2d) 561. Upon the retrial the case was submitted to the jury upon questions relating to defendant's duty to have a

white light on the leading car both under and independently of rule 24. The jury returned a verdict for plaintiff, upon which judgment was entered.

On the former appeal we held, on the record there presented, that it was not the duty of defendant, under rule 24, to display a white light "on the end of the leading car." Much of the evidence upon which plaintiff relies on this appeal is the same as that on the former. The additional evidence in our opinion does not show that the conclusion then reached was incorrect. The cars were being shifted from one part of the yard to another to be put in a train. They were in charge of a crew which was engaged exclusively in switching cars in the yard. Furthermore, the plaintiff alleged and reiterated in his petition that at the time of injury defendant was "switching and moving said cars." All the witnesses admit that shifting includes switching, and the statements of the new witnesses that this was not a shifting or switching movement are mere conclusions of the witnesses, not based on facts nor, as shown on cross-examination, supported by reason. Such testimony cannot be said to present this aspect of the case in a different light from that presented on the former hearing.

■ The other question submitted to the jury related to the duty of defendant, according to custom, to have a brakeman "with a lighted lantern at the forward end of a car or cut of cars being pushed." This question, in a somewhat different form, was referred to in the former opinion. It is not claimed by plaintiff that there was any practice or custom to have a man standing *at* the front end of the car, on the coupler, but that it was customary to have him on the leading car sufficiently close to the end for his light to be seen by those working on the tracks. The plaintiff testified on this trial as on the former, that some one, probably the yard foreman, in telling him that he would not need a lantern, told him to look for "the light of the engine switchman" or "for the light on the head end of the leading car," and up to that time he had always got it. Brinkley testified that the "lantern is usually found on the front cut," and that "the safe part of riding a box car is to get in the middle of the car so that if a quick stop is made he [the brakeman] would not be jerked off." Radcliffe, another witness for plaintiff, said that he was instructed by yard conductors to be "on the head end of the head car," and Paine said he was told when moving cars on this track to "have a man on the head end of the head car with a lantern." Nelson testified that when he was an employee of defendant his boss, the terminal trainmaster, gave him instructions "to ride the head car with a light at night, close to the end as possible." None of this testimony except plaintiff's was in the former record. It was sufficient to make an issue for the jury as to whether in a movement of this kind—not where the crew is classifying cars or engaged in cutting them off and shunting them on tracks—it was the custom to have a brakeman with a light on the front end of the leading car by night. There was some evidence, too, enough for the jury we think, to the effect that one of the purposes of having the brakeman and light so located was to warn employees working in the yards.

■ This brings us to the inquiry as to whether there was substantial evidence that the custom was not observed on this occasion. Plaintiff testified, as he did on the former trial, that every two or three seconds he "would glance up and down the track, look for a light, and make a few strokes with the brush and look again," and that he "looked two or three seconds" before he was struck. Moore, the brakeman, testified that he was riding about the middle of the car, holding his lighted lantern on his arm. He was corroborated as to being on the car by the other members of the crew. None of them, however, seemed to know his exact position. There is nothing in the record to show that plaintiff could not have seen a light held by a man standing in the middle of the top of the leading car, and if Moore was standing on the car holding his lantern, as he says, there was a compliance with the custom that plaintiff's evidence tended to prove. The controverted point, therefore, is whether Moore was so located on the car with a light. Defendant contends that the evidence was not sufficient on this issue to take the case to the jury. While a mere "scintilla of proof" touching a material issue in a case is not sufficient to submit the case to the jury, Hardy-Burlingham Min. Co. v. Baker, 10 F. (2d) 277 (C. C. A. 6), we have held that evidence of failure to see or hear is in some circumstances substantial evidence of the nonexistence of the fact, Grand Trunk Western Ry. Co. v. Heatlie (C. C. A.) 48 F. (2d) 759. This case, we think, is a proper one for the application of that rule.

But the case was erroneously submitted to the jury on the question of the duty of defendant under rule 24, and as the jury's ver-

dict was quite probably based upon that theory, the judgment is reversed and the cause remanded to the lower court for further proceedings.