THESE parties appear here in the same order as in the trial court. Plaintiffs in error, hereinafter referred to as plaintiffs, are the children and sole heirs of Fred R. Dwinelle, deceased, hereinafter referred to as Dwinelle. Defendants in error are hereinafter referred to as the *Page 547 
company, Finn, and Cox, respectively. Finn was a motorman who operated a gas motorcar for the company over its railroad. Cox owned a truck operated over the highway by Walter Perry, hereinafter referred to as Perry.
One winter morning in 1936 while Dwinelle, with the consent of Cox, was riding as a guest in the truck operated by Perry, a collision occurred between that truck and the motorcar operated by Finn, and Perry and Dwinelle were both instantly killed. Plaintiffs, alleging negligence on the part of Perry, as the agent of Cox, and Finn, as the agent of the company, brought this action against Cox and the company for damages in the sum of $5,000. Cox answered separately, denying negligence and placing responsibility on Dwinelle and the company. Finn and the company filed a joint answer, denying negligence and placing responsibility on Perry and Dwinelle. At the close of plaintiffs' evidence Cox moved for a nonsuit and that motion was overruled. Finn and the company moved for a directed verdict and that motion was granted. The cause proceeded as to Cox and the jury found for him. To review the judgments entered accordingly plaintiffs prosecute this writ. The eleven assignments go to the order directing a verdict for Finn and the company, certain rulings admitting and excluding testimony, the weight of the evidence, and an order striking from the record an affidavit of "proceedings in chambers," hereinafter referred to as Exhibit A. The only instruction questioned is No. 22 which directed a verdict for Finn and the company.
Some further facts will clarify the picture and elucidate our disposition of the cause. This accident occurred about 8:40 A. M., February 8, when the temperature stood at approximately 20 degrees below zero. Perry was driving north on the public highway and Finn west on the railway. At the point of collision these intersect almost at right angles. One Marks, in a loaded truck, was following Perry and witnessed the catastrophe from a distance of 500 feet. Railway and highway are comparatively *Page 548 
straight and the view from each to the other unobstructed for a considerable distance from the intersection. Cox himself, driving another truck, was between one and two hundred yards ahead of Perry. Immediately preceding the collision Perry was traveling 50 to 55 miles per hour and Finn 40 to 45, and neither slowed down. Finn first saw the truck approaching when each was approximately one-half mile from the intersection and saw Perry last 250 feet (two and one-half seconds) therefrom, at which point his view was cut off by his own radiator. The highway is a main traveled thoroughfare in constant use by countless automobiles of every description. Finn's train consisted of two cars. The rails that morning were badly frosted rendering his brakes practically useless. The pavement over which Perry was traveling was clear. The front of the motorcar struck just back of the cab of Perry's truck. Finn had worked for the company 29 years, much of the time on this line, passing this crossing daily. Under ordinary conditions his motorcar would travel about 146 feet from the shift of his brake lever until the brakes took hold, and an emergency stop could be made in 500 feet. Under the conditions existing such a stop could not be made under 1000 feet. At a speed of 50 miles an hour Perry could have stopped his truck in 100 feet or less. The windows and windshield of the truck were frosted, those of the motorcar not. The evidence is positive and unequivocal that Finn was giving all the required signals for the crossing. There is some negative evidence that he did not, i. e., witnesses so situated that they should have heard, say they did not, but decline to state that the signals were not in fact given. We think there is no conflict. If there was negligence on the part of the company it was the negligence of Finn. No other is claimed. At the time Perry's truck passed out of the line of Finn's vision the former had ample time to stop short of the crossing. Such was the custom of motor vehicles and there was nothing to warn Finn that Perry would not do so. The impact derailed *Page 549 
the front truck of Finn's car after which it ran 480 feet before coming to a stop. The jury was told by instruction No. 7 that Perry's negligence, if any, was the negligence of Cox, and by instruction No. 5 that plaintiffs could not recover unless Dwinelle, injured and living could have recovered. Hence the simple question was, Could Dwinelle, so injured, have recovered on the negligence of Perry or Finn? As to the former the jury said, No. As to the latter the court said, No evidence.
[1, 2] We think the foregoing clearly establishes primary negligence on the part of the driver of the truck and absence of primary negligence on the part of Finn. That the former could and should have avoided this accident is too clear for question, and that Finn, up at least to the point where he last saw the truck, was within the law and acting as an ordinarily prudent person under the circumstances, is equally clear. We should add here that there is no positive evidence as to whether Perry or Dwinelle was in fact at the wheel of the truck at the time of the collision. All the presumptions ordinarily deducible from the record point to the conclusion that it was the former, and that the latter was not familiar with the vehicle or its operation. But since the conduct of the driver was so inconsistent with all that is disclosed concerning Perry's duty, knowledge, skill, and experience, we can not say that the jurors were precluded from assuming that he must for the time being have relinquished his seat to his passenger. If that in fact occurred the claim of these plaintiffs for damages for primary or contributory negligence against either the company or Cox is foreclosed.
[3] This relegates us to the single remaining major contention made by plaintiffs, i. e., last clear chance. It must be admitted that if the impending peril in which the parties found themselves was due entirely to the negligence of Perry and Dwinelle, and yet was discovered by Finn, or, in the exercise of reasonable care, ought to have been discovered by him, in time to avert the accident, the *Page 550 
doctrine applies and the cause should have gone to the jury as against the company. Finn's undisputed evidence is that under existing conditions it would have been impossible to have appreciably slackened his speed prior to the impact. But it is pointed out that the slackening of Finn's speed by the fraction of a second, which would have been possible by the application of his brakes, or a resort to sanding, would have avoided the collision. We must remember, however, that the slightest slackening of Perry's truck would have produced the same result and this Finn had a right to expect. If both slackened speed equally they would have clashed as they did. Thus Finn dared act only on the assumption that Perry would not act. Moreover, Finn's undisputed evidence is that in the time and space remaining to him when he last saw the truck neither brake nor sanding would have retarded his speed "to the slightest degree." "Just the same as if you lock your wheels on your automobile on an icy road." This is verified by the common experience of automobile drivers. In fact it is well known that under certain conditions instead of speed being slackened it may thus temporarily be accelerated and it would appear that undisputed conditions here present were ideal for producing that result so far as Finn's motorcar was concerned. The doctrine of last clear chance applies only where plaintiff's negligence is admitted, and he has the burden of proving it as any other fact. The most that can be said here on the point is that the evidence discloses a mere possibility that Finn might have avoided the collision, and that possibility rests upon split seconds. This is not enough to meet the rule. It may present a last, but not a clear, chance. Cashell v. Southern Ry. Co.,152 Va. 335, 147 S.E. 209.
Counsel for plaintiffs answer some of the foregoing assumptions of fact on the theory that certain of Finn's undisputed testimony is "contradictory, obviously false and physically impossible." We can only say that we find ourselves unable to concur in that denunciation. *Page 551 
[4] The court excluded testimony of plaintiffs' witnesses Lilley and Lezotte as to the possible effect on Finn's speed of sanding. These witnesses showed themselves unacquainted with the type of Finn's car, its equipment or manner of operation, hence failed to qualify.
[5] The affidavit, Exhibit A, was inserted for the purpose of showing that the trial court sustained the motion for an instructed verdict under an erroneous theory of last clear chance. It was properly stricken, first, because, save in very unusual circumstances, not here apparent, these informal chamber conferences are not intended to be, and are not, properly a part of the record of the trial, and the participants should not be hampered in them by a consciousness that they may be made such by affidavit. Second, from the whole record we conclude that the trial judge held no such erroneous theory as the affidavit attributes to him. Moreover counsel for the company admit that the law of last clear chance is as counsel for plaintiffs here contend and as we have assumed.
Thus far we have considered only plaintiffs' case against the company. Record, assignments, and briefs are largely devoted thereto. The case against Cox is treated in each as a side issue worthy of little consideration. On this branch nevertheless two errors are urged which require brief notice. First, the admission of the testimony of the witness Meade; and second, that the verdict is contrary to the evidence.
[6, 7] Meade testified that a short time before the accident Dwinelle, who was divorced, had said, in substance, that if he wasn't staying with Cox he didn't know what he would do as his family had "turned him down." Plaintiffs, relying upon the rule stated in 22 C. J., p. 216, section 179, and the construction given our applicable statutes (§§ 1, 2 and 3, c. 50, vol. 2, '35 C. S. A.) in Hindryv. Holt, 24 Colo. 464, 51 Pac. 1002, insist that the admission of this statement was erroneous and highly prejudicial because the act is not a survival statute hence such *Page 552 
declarations by Dwinelle were not admissible against plaintiffs. The evidence was apparently offered on the theory that since the purpose of the act is, as stated in the opinion in the Hindry case, supra, "to compensate those who suffer pecuniary loss by reason of the death" the testimony tended to show that plaintiffs suffered no such loss. We agree with counsel that the statement objected to "did not disclose the deceased's financial condition." We regard the error, if any, as trivial and not reversible. Moreover, as the jurors were instructed, plaintiffs had no cause of action unless Dwinelle would have had such if death had not ensued. Plaintiffs' cause is thus tied to Dwinelle's. If Dwinelle had lived his statements against interest would have been admissible and might have foreclosed him. If such statements be barred because Dwinelle was dead then plaintiffs might recover when Dwinelle, if living, could not. Hence consistency demanded the admission.
[8] Plaintiffs' right of recovery, if any, against Cox is limited by our guest statute, section 371, chapter 16, page 241, volume 2, '35 C.S.A., which requires proof that the death of Dwinelle was intentional on the part of Perry, or caused by his intoxication, "or negligence consisting of a willful and wanton disregard of the rights of others." Since the record discloses nothing from which Perry's intention or intoxication could be presumed the question is, Was the evidence of Perry's driving and "willful and wanton disregard" so conclusive as to foreclose a verdict to the contrary? We think not.Millington v. Hiedloff, 96 Colo. 581, 45 P.2d 937.
Countless authorities are cited and quoted in the briefs before us. We have examined these with care but find no occasion to analyze them here. They disclose no conflicts material to our conclusion and no substantial disagreements between counsel as to the law. They are not in accord in their application thereof to the facts of this case but that divergence arises wholly from their divergent interpretation of those facts. There is doubtless *Page 553 
in this record, as in practically all such, minor errors which, microscopically examined, assume huge proportions. But, testing the case against the company by broad general principles and interpreting the facts of the case against Cox as the jurors were entitled to interpret them, and guided by common sense and the common experience of mankind, we are forced to the conclusion that the court was right and the jurors well within their province. In truth a contrary result would have been more surprising and open to more serious objections than that here reached.
The judgment is accordingly affirmed.
MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.