## UNION PAC. R. CO. v. GAEDE.
### No. 1953.

Circuit Court of Appeals, Tenth Circuit.

March 28, 1940.

---

E. G. Knowles, of Denver, Colo. (T. W. Bockes, of Omaha, Neb., and Montgomery Dorsey and Hughes & Dorsey, all of Denver, Colo., on the brief), for appellant.

H. Gordon Howard, of Fort Collins, Colo., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Mrs. Carrie Gaede brought this action against the Union Pacific Railroad Company to recover damages for personal injuries sustained as the result of a crossing accident in Greeley, Colorado, on January 4, 1939. From a judgment for the plaintiff, the Railroad Company has appealed.

The facts are not in substantial dispute. On the evening of January 4, 1939, the plaintiff and her husband, Peter Gaede, were returning from the east side of Greeley, where they had attended church, to their home at 1013 First Street in Greeley. They were accompanied by one John Schneider. They were traveling in a 1929 Ford coupe. Gaede was driving, plaintiff was seated in the middle, and Schneider was seated on the right hand side. The Railroad Company's lines run north and south through Greeley. They are intersected by Fifth Street, which runs east and west. As the Gaedes and Schneider traveling westerly approached the Fifth Street crossing a freight train of the Railroad Company was approaching from the south about one block away. At this crossing there is a main line and two side tracks easterly from the main line. Certain freight cars, standing on the most easterly side track and on the south side of Fifth Street, obstructed the view of a person traveling westerly on Fifth Street until he reached a point between 30 and 40 feet east of the main line track. As Gaede approached the crossing he looked to the south. He was driving at a speed of about 15 miles per hour, but as he approached the crossing he slowed down to about 10 miles per hour. About the time he reached the main line track the motor stalled and stopped, but the momentum carried the coupe on to the main line track where it stopped. Schneider was able to get out of the car and travel a distance of between 5 and 10 feet before the collision. The front end of the freight train engine struck the coupe, causing severe injuries to plaintiff.

None of the occupants of the coupe heard any bell or whistle signal from the train. When the coupe approached the main line track the train was about one-half block away. Mr. and Mrs. Arthur Francen approached the crossing from the west and stopped to permit the freight train to pass in front of them. Both heard the whistle signal as they approached the crossing. Marguerite Orr, who lives at 713 Fifth Street, Greeley, heard the whistle signals for Fifth and Sixth Streets, Sixth Street being south of Fifth Street. The engineer of the head engine testified that the bell was ringing automatically when he left La Salle, south of Greeley, and that it was still ringing after the accident. He testified that he gave the whistle signals for Fifth and Sixth Streets. This testimony was corroborated by the fireman on the head engine, the head brakeman, and the engineer on the helper engine immediately behind the head engine.

The engineer on the head engine saw the Gaede coupe approach the crossing slowly and believed it was going to stop. The coupe moved on to the main line track and passed out of sight of the engineer. He believed it had time to pass over in safety. The train was traveling between 20 and 25 miles per hour. The nearest point that the engineer from his position in the cab could see the rails was about 75 feet ahead of the engine. The engine was about 50 to 60 feet from the coupe when it came to a stop on the main line track. The fireman, from his position on the left side of the cab, saw the coupe stop and called to the engineer to apply the emergency brakes. The engineer immediately applied the emergency brakes, but was unable to stop the train in time to avoid the collision. The braking equipment was in proper condition and the engineer stopped the train as quickly as possible, but it traveled between 700 and 800 feet past the crossing before he was able to bring it to a stop.

The coupe moving at a speed of 10 miles per hour was traveling 14.67 feet per second. The train moving at a speed of 25 miles per hour was traveling 36.67 feet per second. Since the train was 50 to 60 feet away at the time the coupe came to a stop upon the tracks, and since the speed of the coupe would have carried it over the tracks in less than one second, it follows that, but for the motor failure, the coupe would have passed over the crossing in safety.

At the close of the evidence the Railroad Company interposed a motion for a directed verdict in its favor on the ground that the proof failed to establish negligence on the part of the Railroad Company and showed that the proximate cause of the accident was the stalling of the coupe on the main line track. The trial court denied the motion and also denied a motion duly interposed by the Railroad Company to have the verdict and judgment set aside and judgment entered in its favor in accordance with its motion for a directed verdict.

▪ The negative evidence of plaintiff and Schneider that they did not hear the signals could not overcome the positive evidence of the trainmen and disinterested witnesses that the signals were given.[1]

▪ The train was visible to the occupants of the coupe after they reached a point between 30 and 40 feet easterly of the main line track. The train signals were being given. It was about 8:45 P. M., and dark. The engine headlight was on. As Gaede approached the main line track he reduced his speed. Under the circumstances, the engineer had the right to assume that Gaede would stop.[2]

▪ Assuming, but not deciding, that it was the duty of the engineer to apply the brakes immediately when he discovered that Gaede was going to attempt to cross in front of the train, his failure so to do was not the proximate cause of the accident. When Gaede passed on to the crossing the train was not more than 100 feet away. Had application of the brakes been made immediately it would not have prevented the accident, because the brakes were applied before the engine reached the crossing, and it traveled between 700 and 800 feet beyond the crossing before the engineer could bring the train to a stop. The cause of the accident was the stalling of the coupe on the main line track and not the failure to make an earlier application of the brakes. There is no basis for the application of the doctrine of last clear chance. See Dwinelle v. Union Pacific R. Co., 104 Colo. 545, 92 P.2d 741.

The judgment is reversed and the cause remanded with instructions to enter judgment for the Railroad Company.

[1] Globe Indemnity Co. v. Stenger, 82 Colo. 47, 256 P. 658; Bergman v. Northern Pac. Ry. Co., 8 Cir., 14 F.2d 580, 582.

[2] Dwinelle v. Union Pacific R. Co., 104 Colo. 545, 92 P.2d 741; Markar v. New York, N. H. & H. R. Co., 2 Cir., 77 F.2d 282, 284; Auvil v. Western Maryland Ry. Co., 4 Cir., 19 F.2d 30, 32; Gray v. Missouri Pacific Ry. Co., 6 Cir., 23 F.2d 190.