## UNION PAC. R. CO. v. BURNHAM.

### No. 2363.

Circuit Court of Appeals, Tenth Circuit.

Dec. 24, 1941.

Charles J. Kelly, of Denver, Colo. (T. W. Bockes, of Omaha, Neb., and E. G. Knowles and Hughes & Dorsey, all of Denver, Colo., on the brief), for appellant.

Darwin D. Coit, of Denver, Colo. (Finlay M. Robinson and William L. Branch, both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Burnham recovered a judgment against the Union Pacific Railroad Company for personal injuries and damages to his Ford truck resulting from a collision between the truck and a locomotive of the railroad company which occurred in Greeley, Colorado.

Burnham is a painter by occupation. A few minutes after 8 o'clock, A. M., on June 28, 1940, Burnham, traveling in the truck, entered the westerly opening of an alley situated between Sixth and Seventh Streets in Greeley, Colorado, and proceeded easterly through the alley.

A commercial track of the railroad company extends along the easterly opening of the alley running at approximately a right angle to the alley. Buildings are located on both sides of the alley at its easterly opening. The distance between the west rail of the commercial track and the east side of the building on the south side of the alley is 5 feet, 1¼ inches. The distance between the west rail of the commercial track and the east side of the building on the opposite side of the alley is 5 feet, 3¼ inches. The width of the alley is 19 feet, 10½ inches. There is an offset in the northeast corner of the building on the south side of the alley 4 feet, 10 inches in length from east to west and about 1½ feet in width. A telephone pole is situated about 1¾ feet from the south side of the alley and about 12 feet from the west rail of the commercial track. There is a stop sign on the telephone pole. Burnham testified that he stopped at the stop sign, with the front bumper of the truck at the stop sign and the left wheels of the truck about one foot north of the center line of the alley; that the distance from the front seat to the front bumper was about 6 feet; that from the point where he stopped, he could see 8 or 10 feet along the commercial track; that he did not hear any engine bell, whistle, or escaping steam, nor see any flagman or member of the train crew at the alley; that it was a clear, still day; that he was wearing an ordinary painter's cap; that the truck was an open type with a cloth top and no windows; that there was no noise to interfere with his hearing; that he could have heard the locomotive bell had it been ringing, and that it was not ringing; that he moved forward from the stop sign at a speed of about one mile per hour to get a better view and again stopped when the bumper of his truck was about 2½ feet

from the west rail of the commercial track; that he then looked first to the left and did not see any train; that he then looked to the right and the locomotive was upon him.

The cylinder of the locomotive collided with the front end of the truck, swung it around against a telephone pole on the north side of the alley, resulting in a fracture of the left hip of Burnham and contusions and abrasions to his body, and damage to the truck.

The center of the cylinder on the locomotive is the widest part of the locomotive. It extends 2 feet, 6¾ inches outside the adjacent rail.

The evidence established that it was customary for the railroad company to have a lookout at the alley when a train was making a backward movement on the commercial track but not when it was making a forward movement. The movement on the day of the accident was a forward movement. Five members of the train crew testified that the bell was ringing continuously from the time the forward movement started until after the accident occurred. Two employees of the owner of the building situated on the south side of the alley, who were working in the building, testified that the bell was ringing as the train approached the alley and at the time of the accident.

As the locomotive approached the alley it was traveling 3 to 5 miles per hour.

A diagram, drawn to scale and admitted to be correct by both sides, shows that Burnham could have seen from where he stopped at the stop sign to a point on the east rail of the commercial track about 10½ feet south from where the south line of the alley, if extended, would intersect the commercial track. It further shows that had he stopped at a point where the front bumper would have barely cleared the locomotive, he could have seen to a point on the east rail of the commercial track about 40 feet south from where the south line of the alley, if extended, would intersect the commercial track.

The railroad company seeks reversal of the judgment on two grounds, (1) that the evidence did not establish negligence on the part of the railroad company, and (2) that it affirmatively showed that Burnham was guilty of negligence which contributed to the accident.

An ordinance of the city of Greeley requires that the engineer shall ring, or cause

to be rung, the locomotive bell when approaching a public crossing and shall continue to ring such bell until the engine and train of cars shall have cleared the crossing, and that while an engine or train is moving within the city limits, that he shall ring, or cause to be rung, the locomotive bell continuously.

█ Burnham's evidence respecting the ringing of the bell was more than negative evidence. After testifying that he did not hear any bell or whistle warning signal, he further testified with respect to the conditions existing at the time he approached the crossing, and bearing on his ability to hear the bell had it been ringing, from which the jury could have reasonably concluded he would have heard the bell had it been ringing; and he testified affirmatively that "there were no bells or whistles."

█ Colorado has adopted the negative evidence rule. Globe Indemnity Co. v. Stenger, 82 Colo. 47, 256 P. 658. However, in the later case of Colorado & S. Ry. Co. v. Honaker, 92 Colo. 239, 19 P.2d 759, 763, the court, after referring to the Stenger Case, said:

"The probative force of negative testimony depends largely upon circumstances. In some circumstances, its probative force may be so slight as to reach the vanishing point; in other circumstances, such testimony may be more persuasive than the positive testimony of some witnesses. It is only when it is so clear that such testimony has no probative value whatever that reasonable men would not differ in their conclusions with reference thereto that courts are justified in disregarding it on the ground that it does not rise to the dignity of evidence."

Again in Denver Tramway Corporation v. Burke, 94 Colo. 25, 28 P.2d 253, 254, the court said:

"It is contended that the tramway's evidence * * * is positive, and that plaintiff's, being merely negative, is of no probative effect under Globe Indemnity Co. v. Stenger, 82 Colo. 47, 256 P. 658, and cases therein cited. * * * Plaintiff repeatedly testified that she was looking, could have seen the stop lights had there been any, and did not see them. She was not asked if she could say positively that there were no such lights. However, in answer to the question * * * 'Did you see it (the bus) in the act of coming to a stop?' she answered: 'I saw it in the street, but I did not know it was going to come to a stop. There was no signal whatever.' There is nothing negative about that evidence. It could not be more positive."

█ The negative rule is also followed in the Federal Courts, Union Pacific R. Co. v. Gaede, 10 Cir., 110 F.2d 931, but the Federal cases hold that the rule is not without qualifications; that the probative value of negative testimony depends upon the surrounding conditions, and that where the witness is so circumstanced that in all probability he would have heard the signal had it been given, the testimony that he did not hear the signal is sufficient to take the case to the jury.[1]

█ We conclude that testimony respecting the ringing of the bell presented an issue of fact for the jury.

█ Under the evidence, this was not a case of failure to stop and look before crossing the commercial track. Burnham stopped to look but failed to gauge with sufficient accuracy the space necessary to permit the locomotive to clear the truck. His view was obstructed by the building to the south of the alley. In order to see more than a short distance down the commercial track to the south, it was necessary for him to move forward several feet from the stop

[1] Northern Pacific R. Co. v. Heaton, 8 Cir., 191 F. 24, 25;

Lehigh Valley R. Co. v. Mangan, 2 Cir., 278 F. 85, 88, 89;

Chicago & Northwestern Ry. Co. v. Andrews, 8 Cir., 130 F. 65, 70;

Norfolk & W. Ry. Co. v. Collingsworth, 6 Cir., 52 F.2d 827, 828;

Grand Trunk Western Ry. Co. v. Heatlie, 6 Cir., 48 F.2d 759, 760;

Baltimore & O. R. Co. v. O'Neill, 6 Cir., 186 F. 13, 15;

Detroit Southern R. Co. v. Lambert, 6 Cir., 150 F. 555, 557;

Northern Pacific R. Co. v. Freeman, 174 U.S. 379, 381, 19 S.Ct. 763, 764, 43 L.Ed. 1014.

In the case last cited, the court said:
"There was testimony from several witnesses in the neighborhood tending to show that no whistle was blown by the engineer as the train approached the crossing. There was also the testimony of the conductor, engineer, and fireman that the whistle was blown. As the majority of plaintiffs' witnesses were so located that they would probably have heard the whistle if it had been blown, there was a conflict of testimony with respect to defendant's negligence, which was properly left to the jury."

sign, bringing the front end of his truck into a position of proximity to the west rail of the commercial track. This left only a small space for clearance between the front of the truck and the cylinder of the locomotive. Had Burnham allowed only a few inches more he would have been safe. Under the circumstances, we think the minds of reasonable men might differ as to whether Burnham, in failing to accurately estimate and allow sufficient space for clearance, failed to exercise that degree of care which a person of ordinary prudence, under such circumstances, would have exercised; and conclude that the question of contributory negligence was for the jury.

The judgment is affirmed.