The UNION PACIFIC RAILROAD
COMPANY, Appellant,

v.

H. B. WARD, doing business as Ward
Transport Service, Appellee.

No. 5207.

United States Court of Appeals
Tenth Circuit.

Feb. 8, 1956.

Rehearing Denied March 5, 1956.

Clayton D. Knowles, Denver, Colo. (E.
G. Knowles, Richard H. Shaw, Denver,
Colo., W. R. Rouse and F. J. Melia, Oma-
ha, Neb., on the brief), for appellant.

Kenneth M. Wormwood, Denver, Colo. (Thomas E. McCarthy, Denver, Colo., on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

H. B. Ward, doing business as Ward ·Transport Service, brought this action against the Union Pacific Railroad Company, for damages to his tractor and tank trailer resulting from the alleged negligent failure of the Railroad to stop its train in time to avoid a crossing accident near Adams City, Colorado on April 27, 1953. In its answer, the Railroad denied negligence and filed a cross complaint for damages to its property resulting from the alleged negligence of Ward's agent in allowing the vehicle to become stalled on the tracks. From a judgment based on a jury verdict in favor of Ward, the Railroad has appealed; contending that there was no negligence on its part, and in any event, the issues were not properly submitted to the jury in the instructions of the court.

E. J. Moore, who was the engineer on the train, had worked for the Railroad about forty years, the past eleven of which he had held the position of Road Engine Foreman. He had no regularly scheduled runs, his job being in more of a supervisory capacity, and he was operating this particular train because it was a detour from the regular route. He testified that in coming around the curve approaching the straight-a-way to the crossing, he and the fireman observed the transport about 2000 feet away, but viewing it from that angle, they both thought it was stopped on the east side of the crossing waiting for the train to pass; that he remarked to the fireman, "there is a tanker—looks like a tanker to me—and he is using a lot of caution, giving us a lot of room today." Moore further testified that if the train had been thrown into emergency at that point, it could have been safely stopped before reaching the crossing, but that it was only after the train had entered the straight-a-way about 1000 feet from the crossing that they realized the transport was on the tracks, and that the train could not be stopped in that distance. Numerous photographs were introduced in evidence by both parties showing the approach of the tracks to the crossing from varying distances. The jury viewed the scene of the accident, and after submission, returned a verdict in the amount of $6,-401.95 in favor of Ward as the reasonable value of the transport and gasoline.

■ The issue of primary negligence was submitted to the jury under conventional instructions to which there was no objection, except the Railroad did particularly object to that part of the court's instructions which told the jury in effect that in determining whether the engineer should have discovered the standing truck astride the tracks, they could take into consideration what a reasonably prudent person would have perceived when he saw the standing truck from a distance of about 2000 feet; "for", said the court, "to look without reasonable care and without seeing what would be plainly visible to any reasonably prudent man under those circumstances, would be the same as not looking." The court thus told the jury that if a reasonably prudent person would have ascertained that the truck was astride the tracks when he first saw it, the failure to do so and to act accordingly constituted negligence. We think it plainly stated the standard of conduct for ordinary care in the circumstances.

■ The Railroad also objects to the refusal of the court to instruct the jury that the appellee was guilty of negligence as a matter of law by permitting a vehicle known to be in an unsafe condition to be driven on a public highway in violation of Colorado law making it "a misdemeanor for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person * * *." § 241, Ch. 16, 1935 C.S.A.

(Now § 13–4–86, C.R.S.1953). Conceding without deciding that the violation of the statute would be negligence per se, there was proof to the effect that just prior to the accident the truck was in good running condition; that it had been thoroughly checked by a company mechanic about one week before the accident, and that no defects were found in the battery and its connections. These facts do not convict the appellee of a misdemeanor. At most they present only an issuable fact of contributory negligence.

■■ The Railroad also objected to the refusal of the court to instruct on res ipsa loquitur, the contention being that the failure of the battery on the truck caused it to stall on the track, and since that failure could not be accounted for by any evidence reasonably within the reach of the Railroad, a presumption of negligence arose requiring Ward to explain the accident, in the absence of which the jury must find Ward guilty of negligence. In the first place, res ipsa loquitur has no application whatsoever to these facts. The truck and battery were indeed under the exclusive control of Ward or his agent, but there is nothing in the record to indicate that he possessed superior knowledge of the cause of the battery failure, or for that matter, that battery failure is an unusual or extraordinary occurrence, which, when unexplained, is evidence of negligence. Boulder Valley Coal Co. v. Jernberg, 118 Colo. 486, 197 P.2d 155. In the second place, res ipsa loquitur does not require an inference of negligence. It is merely a rule of evidence under which the unexplained occurrence or the act itself creates a factual presumption warranting but not compelling an inference of negligence. E. I. Du Pont De Nemours & Co. v. Cudd, 10 Cir., 176 F.2d 855; Atchison, T. & S. F. Ry. Co. v. Simmons, 10 Cir., 153 F.2d 206; United States v. Kesinger, 10 Cir., 190 F.2d 529; Long v. Union Pac. R. Co., 10 Cir., 192 F.2d 788; Zampos v. United States Smelting Refining & Mining Co.,

10 Cir., 206 F.2d 171; Senter v. B. F. Goodrich Co., D.C., 127 F.Supp. 705.

But even so, Ward did come forward with the explanation that the battery had been inspected about a week before the accident, and that it was in good condition. The driver of the truck testified that as he neared the grade approaching the crossing, he stopped and looked for trains; none being in sight, he started to proceed over the crossing, and in doing so the motor hesitated and stopped or nearly stopped. He stepped on the starter and when the motor again appeared to be running smoothly, he proceeded up the grade and onto the tracks, where the motor completely stopped. The stalled transport was in such a position that it could coast neither forward nor backward. After looking at the battery and finding that the metal lead between two of the battery cells was broken, rendering the battery completely useless, he called to some men who were working at a nearby farm house to come and help him move the transport from the tracks. He got some flags from the truck, intending to start down the track to put out warnings, but at that instant he heard a whistle and as he came around the truck, he saw the train approaching approximately 1000 feet away at the rate of 35 or 40 miles per hour.

■■ The case was submitted to the jury under positive instructions to the effect that if they found the plaintiff, Ward, contributorily negligent, they must find for the Railroad, unless they also found by a greater weight or preponderance of the evidence that the defendant had the last clear chance to avoid the accident. The Railroad objected to an instruction on last clear chance on the grounds that there was no evidence of it, or in other words, that when the engineer first discovered the perilous position of the transport, it was too late to avoid the collision. And, of course there must have been more than a possibility of avoiding the accident, there must have been a clear chance to do so.

Dwinelle v. Union Pac. R. Co., 104 Colo. 545, 92 P.2d 741; Scott v. Matsuda, 127 Colo. 267, 255 P.2d 403; Anchor Casualty Co. v. Denver Rio Grande West R. Co., Colo., 277 P.2d 523; Union Pac. R. Co. v. Gaede, 10 Cir., 110 F.2d 931; Owens v. United States, 10 Cir., 194 F.2d 246.

Obviously, we cannot tell whether the jury's verdict rests upon primary negligence and noncontributory negligence or the last clear chance. But in either event, the factual issue of negligence is the same, namely, should the engineer have discovered the perilous situation when he first saw the truck 2000 feet from the crossing. If so, his conduct is certainly susceptible of an inference of actionable negligence. And, by the same token, it is also susceptible of a finding that he had the last clear chance to avoid the accident. Cf. Union Pac. R. Co. v. Gaede, supra, where the immediate application of the brakes would not have prevented the accident. After viewing the scene of the accident and hearing the evidence, the jury has said that a reasonably prudent person in the same circumstances would have ascertained that the standing truck was perilously astride the track and not safely standing to one side. And while it may tax our credulity, we are unable to say as a matter of law that the twelve jurors were clearly wrong; and that the peril was not discoverable to a reasonably prudent person exercising ordinary care in the circumstances.

■ The Railroad objected and assigns as error the ruling of the court permitting the appellee to examine the engineer as a hostile witness. They say that there was no evidence of hostility, hence no justification for the privilege. The witness did not appear to be "hostile", but he was the operator of the train involved in the accident. It was his negligence, if any, which spelled liability to the Railroad. He was a veteran employee in a supervisory position; the Railroad arranged for him to come to the trial, and it seems only fair to say that he was an unwilling witness for the plaintiff. No attempt was made to impeach his testimony, and indeed it is the primary basis for the finding of negligence. In these circumstances, we do not believe the trial court abused its discretion in allowing the plaintiff to lead the witness. See United States v. Uarte, 9 Cir., 175 F.2d 110; Maryland Casualty Co. v. Kador, 5 Cir., 225 F.2d 120.

The judgment is affirmed.