**William CURRIE, Plaintiff, Appellant,**

v.

**MOORE–McCORMACK LINES, INC., Defendant, Appellee.**

**No. 5546.**

United States Court of Appeals First Circuit.

Heard Jan. 8, 1960.

Decided Jan. 18, 1960.

See also 23 F.R.D. 660.

Blair L. Perry, Boston, Mass., with whom Leo V. Concannon, Boston, Mass., was on brief, for appellant.

Seymour P. Edgerton, Boston, Mass., with whom Robert J. Hallisey, W. C. Moffett and Bingham, Dana & Gould, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an action brought by plaintiff-appellant against Moore-McCormack Lines, Inc. Plaintiff, a seaman aboard the Destroyer William T. Powell, was injured when a collision occurred between the Powell and defendant's freighter Mormacspruce. Plaintiff was below decks, and the only evidence as to how the collision took place came from his brother, Richard Currie, another seaman aboard the Powell, hereinafter called Currie. At the conclusion of plaintiff's case the court ruled that Currie's testimony would not support a finding of negligence by the Mormacspruce, and directed a verdict for the defendant. This ruling presents the sole question on appeal.

The collision occurred March 31, 1955. Currie had then been two years aboard the Powell. He was 23 years old, and had not completed high school. Although he testified he "knew how to take a bearing," when asked how, he could not re-

call. His only duties with relation to navigation had been to steer the course he was given, and to convey messages to the engine room through the telegraph. On this particular occasion he was in the pilot house, assigned to the telegraph. The Powell was bound up Delaware Bay; the Mormacspruce down. Currie testified that the collision occurred about 8 P.M.[1] Asked whether it was "daylight," he replied that he "couldn't state whether it was light or dark at the time." He testified that he had made two dozen round trips in the bay, and was familiar with it. He did not, however, know what buoys, if any, were in the vicinity of the collision, and when asked the name of the nearest lighthouse, gave the name of a lightship 20 miles distant. On direct examination he stated that the Powell was on the starboard side of the channel. On cross-examination he said he did not "have any idea how you determined the limits of a channel." When asked how he had determined it in this instance his only answer was, "Whenever you return it is always right * * *. It stands a red light reading."[2] This was no more than an affirmation of the Powell's general practice. We cannot suppose that Currie, who admitted he was not qualified to define the limits of a channel, was qualified to state any custom of the vessel with respect to them. We therefore do not reach the very doubtful question of whether a general practice of a vessel to observe rules, without even showing that the regular officers were in charge on that occasion, is evidence that she was observing the rules at a particular moment when an accident happened.

With this background we turn to Currie's account of the collision. On direct examination he testified that when he first saw the Mormacspruce she was 3 or 4 miles away. "Could you see the vessel itself?" "I seen her red port running light * * *. She bore dead ahead." He stated when he next saw her she was about 100 yards off. Asked her position "with reference to the right or left-hand side of the channel at the time of the collision," he replied, "Dead ahead * * * in our side. She was dead ahead all the way." Q. "With reference to the right or left-hand side—" A. "The center of the channel." Q. "At the time of the collision?" A. "At the time she swung to the right, to our side of the channel * * *." The witness then gave certain testimony with respect to whistles, which we will come to later, and concluded his direct with the statement that the Powell swung 80 or 90 degrees to port and was struck on the starboard side, aft.

On cross-examination Currie was reminded that he had said the Mormacspruce when first seen was "dead ahead." Q. "What does dead ahead mean to you?" A. "She was right abeam. Dead ahead." He changed this to "right straight ahead." Q. "You don't have her straight ahead in this diagram." A. "No, sir * * *. I believe she was port dead ahead, sir." The diagram, made by the witness on direct examination, in fact bore little relationship to his oral testimony. The witness then testified that shortly before the collision orders came from the upper bridge for hard left, and to stop the starboard engine, with full ahead on the port. This singular statement was later amplified to indicate that there were a number of orders transmitted with regard to the Powell's engines. What they were is not of present consequence.

We agree with the district court that this evidence, taken as a whole, could not reasonably warrant a finding of negligence on the part of the Mormacspruce.

---

1. At the Coast Guard hearing he said he came on duty at 8 P.M. Hence it was no earlier. The complaint alleged 8:30.

2. The witness did not explain what this last meant. Plaintiff's counsel suggests it referred to the fact that, on entering, the starboard lighted buoys are red. 33 C.

F.R. § 62.25–5(b); § 62.25–20. This may be what the witness had in mind. But it is not to be taken as saying that he was judging by any lighted buoy at the moment. It cannot be forgotten that Currie denied knowledge of whether there were any buoys in the vicinity; or even whether it was light or dark.

While negligence may be established by inference, it must be possible to take some rational view of the evidence as a whole from which there could be drawn an inference which would be more probable than any other. Smith v. Reinauer Oil Transport, Inc., 1 Cir., 1958, 256 F.2d 646, 649, certiorari denied 358 U.S. 889, 79 S.Ct. 133, 3 L.Ed.2d 117; Commercial Standard Ins. Co. v. Feaster, 10 Cir., 1958, 259 F.2d 210, 212. We can obtain no picture from Currie's testimony beyond the fact that there was a collision between the Mormacspruce bound down the bay, and the Powell, bound up, and that at the moment of impact the vessels were starboard to starboard, the Powell having just turned 80 or 90 degrees. There is no basis for finding that the Mormacspruce was on the wrong side of the channel and there is no ground, thus far, for charging her with fault.

The other aspect of plaintiff's case relates to signals. Currie testified on direct examination that prior to the collision the Powell gave "one blast on the whistle," and then "sounded another two blasts," and that he did not hear a response to either. We assume that it would have been a fault by the Mormacspruce if she had not signalled before such blasts, or afterwards. 33 U.S.C. § 203; 33 C.F.R. § 80.3(a). However, on cross-examination, Currie admitted that on his deposition before trial he had testified that the only signal prior to the collision had been a sounding of a siren. Asked whether this was "a true answer," he replied, "I don't know, sir. I can't answer." No attempt was made thereafter to rehabilitate him.

The burden was on the plaintiff. Currie was inside the pilot house, busy receiving and sending signals by the telegraph, and, as plaintiff says in his brief in another connection, "confronted with a disconcerting emergency situation." This distraction came from the orders he was receiving and executing, and not from any outside signals. We doubt very much if he was in a position to hear such as to give his negative testimony on direct examination any substantial significance. The Michigan, 4 Cir., 1894, 63 F. 280, 285, certiorari denied 159 U.S. 262, 15 S.Ct. 1041, 40 L.Ed. 142; Union Pacific R. Co. v. Burnham, 10 Cir., 1941, 124 F.2d 500, 502; Gibb v. Hardwick, 1922, 241 Mass. 546, 549, 135 N.E. 868; Hough v. Boston Elevated Ry. Co., 1928, 262 Mass. 91, 94, 159 N.E. 526. But clearly it had none after his testimony on cross. We are not willing to say that a collision between two vessels can be chargeable to one of them simply because a seaman inside the pilot house of the other occupied with receiving signals from the bridge and transmitting them to the engine room, who cannot finally recall whether his own vessel gave whistle signals or not, does not recall hearing any reply.

Judgment will enter affirming the judgment of the District Court.