## UNITED STATES v. HULL.
### No. 4622.

United States Court of Appeals
First Circuit.

March 19, 1952.

Morton Hollander, Attorney, Department of Justice, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., George F. Garrity, U. S. Atty., and William J. Koen, Asst. U. S. Atty., both of Boston, Mass., and Paul A. Sweeney and Massillon M. Heuser, Attorneys, Department of Justice, both of Washington, D. C., on brief), for appellant.

Joseph S. Kennedy, Dedham, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

An appeal has been taken by the United States from a judgment for the plaintiff in the sum of $750 upon a complaint under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq. The case is a simple one.

Around nine o'clock on the morning of October 11, 1948, the plaintiff entered the United States post office at Medfield, Massachusetts, to purchase some stamps. She went to the window marked "Stamps, General Delivery", which was open for business. There was the usual iron grille

which came down to about two inches from the counter, leaving sufficient space for the customer to slide the money to the clerk and for the clerk to slide the stamps to the customer. Behind the grille was a window consisting of a frosted pane set in an oak frame one-half inch thick. The window was up at the time, though the clerk was not there. Hearing someone coming, the plaintiff, with her left hand, slid the money under the grille. At that moment the window dropped suddenly on the projecting tips of plaintiff's fingers causing the injuries for which she has recovered judgment. The evidence to the foregoing effect was convincing and indeed unquestioned.

The retaining mechanism was described in the evidence as a "pinch latch" which, when pinched together by the operator, automatically caused a pin to be retracted and thus to permit the window to be raised or let down. The window had to be raised all the way, otherwise the release of manual pressure on the pinch latch would not permit the retracted pin to slide across into a slot, or on to a small shelf or peg, and thus to secure the window from falling.

The original complaint charged in general terms "that said movable window and the retaining mechanism which should have held it up were then and there permitted to exist in a dangerous condition; that the existence of said dangerous condition was known to the defendant, its agents and servants or should have been known by them to exist had reasonable and proper inspections thereof been made." This charge was particularized by the plaintiff in answer to an interrogatory propounded by the defendant requiring the plaintiff to specify the manner in which the movable window with its retaining mechanism was negligently permitted to exist in a dangerous condition. Plaintiff answered that this was "by reason of the fact that in spite of previous notifications by the Postmaster to the effect that it was defective the Post Office Department did nothing to remedy the defect."

Since the premises were entirely in the control of the defendant, it is not surprising that plaintiff was unable to establish just why the window fell or to pin a fault of commission or omission on any identified employee of the government. Plaintiff introduced no testimony tending to prove that the postmaster knew of a defect in the retaining mechanism and that he had reported such defect to the Post Office Department. The postmaster, testifying as a defense witness, stated that prior to the accident he had received no report of any difficulty in the operation of the window nor any complaint that the window did not stay in a lifted position once it was raised. The defendant did not, however, offer any explanation of why the window fell without warning, as it undoubtedly did.

After the trial was over, and before the district judge had made his findings, plaintiff moved to be allowed to amend her complaint so as to add a count charging in general terms, with no attempt at further specification, that "by reason of the negligence of the defendant, its agents, servants or employees, a heavy movable window descended on her left hand with great force and violence".

It may be that such amendment was unnecessary; that plaintiff, though unable to sustain a charge of negligence in the specified particular asserted in her answer to the interrogatory, was nevertheless entitled to fall back upon a more generalized inference of negligence, if such inference was warranted under the proved circumstances of the accident. See Prosser, The Procedural Effect of Res Ipsa Loquitur, 20 Minn.L.Rev. 241 (1936); McDonough v. Boston Elevated Ry. Co., 1911, 208 Mass. 436, 94 N.E. 809; Rapp v. Butler-Newark Bus Line, Inc., 1927, 103 N.J.L. 512, 138 A. 377, affirmed 1928, 104 N.J.L. 444, 140 A. 921. At any rate, it does not appear that the government opposed the plaintiff's motion to amend. The court allowed the amendment, and the government did not claim surprise or prejudice because of such allowance, or ask that the trial be reopened to enable the defendant to offer evidence to explain how the window came to fall consistently with due care on the part of the various employees of the defendant. Such evidence, if defendant had any to offer, would of course tend to repel a generalized inference of negligence which

might otherwise be drawn from the mere happening of this type of accident.

The district judge properly ruled that the plaintiff had failed to prove the specific negligence charged in her answer to the interrogatory. But he concluded that, under the amended complaint, the case was a proper one for the application of the doctrine of *res ipsa loquitur;* that the accident "would not have occurred in the ordinary course of things if the Post Office Department, having control of the window, had used proper care." Defendant had pleaded contributory negligence as a defense, but there was not the slightest evidence of that, and the court found that the window fell upon plaintiff's fingers "without any fault on her part". Cf. Jesionowski v. Boston & Maine Railroad, 1947, 329 U.S. 452, 458, 67 S.Ct. 401, 91 L.Ed. 416.

■ Contrary to appellant's contention, we think that the present is a routine case for the application of the doctrine of *res ipsa loquitur* in its most unsophisticated form. The plaintiff needed only to satisfy the trier of the facts that the balance of probabilities was in her favor as to each element of her case. From the sudden and unexplained falling of the window on the customer's fingers, defendant being in control of the premises, was it rational to infer that, more likely than not, the accident was attributable to some negligence or wrongful act or omission of defendant's employees in the scope of their employment? The answer to this question involved an exercise of factual judgment, based on ordinary, everyday experience. It is our judgment that such an inference was a rational one in this case, and that the generalized inference of negligence drawn by the trial judge cannot be said to be "clearly erroneous". Rule 52(a), F.R. C.P., 28 U.S.C. Cf. Jesionowski v. Boston & Maine Railroad, supra; San Juan Light & Transit Co. v. Requena, 1912, 224 U.S. 89, 98, 32 S.Ct. 399, 56 L.Ed. 680; Chiuccariello v. Campbell, 1912, 210 Mass. 532, 535, 96 N.E. 1101, 1102, 44 L.R.A.,N.S., 1050; Davies v. Boston Elevated Ry. Co., 1915, 220 Mass. 200, 107 N.E. 918; Michener v. Hutton, 1928, 203 Cal. 604, 608, 265 P. 238, 239, 59 A.L.R. 480.

■ The use of the Latin phrase *"res ipsa loquitur"* in this connection may be unfortunate, as suggesting that some exotic doctrine is involved. It is nothing more than a case of circumstantial evidence, where plaintiff has proved enough "to get to the jury", and where the inference of negligence, though not necessarily a required one, is a permissible one on the balance of probabilities. See Prosser on Torts § 43 (1941); Sweeney v. Erving, 1913, 228 U.S. 233, 238–240, 33 S.Ct. 416, 57 L.Ed. 815.

■ Of course it is unnecessary, in order to recover from the employer, for the plaintiff to establish just which employee was at fault, and in what specific respect. It is enough if the trier of the facts is satisfied, on the balance of probabilities, that the injury was due to some negligent act or omission of some employee for whom the employer was responsible. In the present case, if the testimony of the postmaster is believed, the possibility may be eliminated that the postmaster himself had knowledge of a defect in the retaining mechanism and had reported it to the Post Office Department. But it still may be that some other employee knew of a defect and failed to report it, or that some employee, having the duty of inspection or maintenance, or both, failed to use care to discover the defect or to remedy it, or that the employee who had raised the window on the morning in question, assuming the retaining mechanism to be in order, negligently failed to raise the window to the full height so that the automatic device could operate to secure the window against falling. In other words, notwithstanding the testimony of the postmaster, we think it was still a permissible inference that the sudden falling of the window was due to some negligent act or omission of some employee for whom the defendant was responsible.

■ Appellant's other contention is that, under the Federal Tort Claims Act, the United States can be held liable in tort only where some "employee himself is legally liable to the person injured"; that though an agent or servant of the land occupier would be subject to liability for negligently *creating* a dangerous condition

on the premises likely to injure a third person—as would be the case here if the postal employee who raised the window had negligently raised it to a level not quite high enough for the retaining mechanism to secure the window against falling—yet in the present case no such finding of specific misfeasance was or could have been made; that, assuming the retaining mechanism was defective "and that some government employee was under a duty to inspect and repair it, his non-feasance in failing to detect and repair the allegedly defective window constituted a breach of duty owed by him to the United States but not to appellee." Greco v. Levy, 1939, 282 N.Y. 575, 24 N.E.2d 989; Norwood v. Carolina Power & Light Co., D.C.E.D.S.C. 1947, 74 F.Supp. 483.

The relevant statutory language, 28 U.S.C. § 1346(b), is as follows: "Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." [1]

To argue, as appellant does, that the United States would be liable only if some government employee were guilty of misfeasance, ignores the phrase "or omission" occurring twice in the statutory language.

It is quite true that the waiver of sovereign immunity under the Federal Tort Claims Act is not unlimited; that Congress has not thrown the door wide open to suits against the United States in tort in all cases where the United States, if it were a private person, would be liable in like circumstances under the applicable local law.

Thus, in certain cases, under local law a private person may be liable without fault for injuries resulting from properly conducted activities deemed "ultrahazardous". Restatement of Torts § 519. But the United States would not be subject to suit on such a liability, for under 28 U.S.C. § 1346 (b), the United States has consented to be sued only where the injury was "caused by the negligent or wrongful act or omission" of some employee of the government while acting in the scope of his office or employment.

Likewise, there are certain cases where under local law a private person may be liable for injuries resulting from the negligence of a carefully selected independent contractor. Restatement of Torts § 416 et seq. Presumably the United States would not be subject to liability in such a case under the Federal Tort Claims Act, for it may well be that the negligent independent contractor would not be deemed an "employee" of the government within the meaning of § 1346(b).

Or again, under a statute like § 59 of the New York Vehicle and Traffic Law, McK. Consol.Laws, c. 71, a private person owning a motor vehicle may be liable for injuries resulting not only from the negligent operation of the vehicle by a servant while acting within the scope of his employment, but also from the negligent operation of the vehicle "by any person legally using or operating the same with the permission, express or implied, of such owner"; thus the owner may be liable under such a statute for the negligence of an authorized bailee using the car on some business other than that of the owner. Cf. Hubsch v. United States, 5 Cir., 1949, 174 F.2d 7, 10, certiorari dismissed 1950, 340 U.S. 804, 71 S.Ct. 35, 95 L.Ed. 590. The latter case does not fall within the terms of the Federal Tort Claims Act, since the negligent bailee would not be an employee of the government acting within the scope of his employment.

---

1. 28 U.S.C. § 2674, which is a portion of Chapter 171 incorporated by reference in § 1346(b), provides that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

But 28 U.S.C. § 1346(b) does not say that the United States is liable in tort only where the employee himself is legally liable to the person injured. In effect the United States argues for an interpretation of the latter part of the section as though it read: "* * * caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant [and where the employee would also be liable to the claimant] in accordance with the law of the place where the act or omission occurred"—an unwarranted interpolation. Take, for instance, the case of Schubert v. August Schubert Wagon Co., 1928, 249 N.Y. 253, 164 N.E. 42, 64 A.L.R. 293, where the defendant's servant, driving defendant's car in the scope of his employment, negligently struck and injured the plaintiff, who happened to be the wife of the negligent servant. The New York court held that though under the local law the wife could not maintain an action of tort against her negligent husband, nevertheless she was entitled to recover from the employer for the injuries inflicted by the negligent servant. It seems to us that under the language of 28 U.S.C. § 1346(b), the United States would be subject to liability under like circumstances.

The liability of a private land occupier for injuries resulting to a business invitee due to the dangerous conditions of the premises is not an insurer's liability. It depends upon a showing of negligence or other wrongful act or omission. The parties in the case at bar do not disagree as to the extent of the occupier's liability to a business invitee under Massachusetts law. The hidden danger in the raised window not having been disclosed to the business invitee, a private occupier would be subject to liability only if the occupier knew, or in the exercise of reasonable care should have known, of the danger. Kelley v. Goldberg, 1934, 288 Mass. 79, 192 N.E. 513; Restatement of Torts § 343. And where the occupier is a corporation, the negligence must necessarily be that of some human being for whom the occupier is responsible. Williams v. United Men's Shop, Inc., 1944, 317 Mass. 319, 58 N.E.2d 2; Lanagan v. Jordan Marsh Co., 1949, 324 Mass. 540, 87 N.E.2d 215. A private corporation occupying business premises would have been liable to a business invitee, under circumstances like the present, if the injury was "caused by the negligent or wrongful act or omission of any employee" of said occupier, while acting within the scope of his employment. This of course would include negligent failure to perform their duties in the case of employees charged with responsibility for inspection, and maintenance or repair, or negligent failure of some higher employee to charge some subordinate with such duties, since a reasonable man would realize that a heavy, raised window, unsecurely held up, would be likely to cause injury to a licensee invited to transact business at the window. The occupier would be liable, whether or not the negligent employee, in such a case, would also be liable to the business invitee under Massachusetts law for injuries resulting from such nonfeasance.

Furthermore, the supposed sharp distinction between nonfeasance and misfeasance as a basis for tort liability rests upon an inadequate analysis of the problem; and the notion that an agent or servant is not liable to third persons for nonfeasance but only for misfeasance is now pretty completely discredited. See Liability of an Agent in Tort, in Seavey, Studies in Agency, pp. 1–27(1949); Lambert v. Jones, 1936, 339 Mo. 677, 687–689, 98 S.W. 2d 752, 757–759; State for Use of Lay v. Clymer, 1943, 27 Tenn.App. 518, 533–534, 182 S.W.2d 425, 430–431; Duensing v. Leaman, 1940, 152 Kan. 42, 102 P.2d 992; Risby v. Sharp-Boylston Co., 1940, 62 Ga. App. 101, 104, 7 S.E.2d 917, 918–919.

A casual passer-by, like the good Samaritan in the Biblical parable, is under no affirmative legal duty to render aid to the stricken man lying in the road, where his relationship to the victim is only that of common humanity. If he had continued on, instead of stopping to help, he would have merely failed to confer a benefit upon a stranger to whose predicament he had in

no way contributed. That would have been a pure case of nonfeasance, where there was no legal duty to act. In the case of an agent or servant, so far as his nonperformance of his undertaking amounts to no more than a breach of contract, of course his liability is only to the employer. But liability in tort extends beyond those who are in privity of contract with the defendant and is founded upon quite different principles. The liability of an agent or servant in tort for what is sometimes called nonfeasance is based upon his "entire course of conduct, which includes the assumption of the duty to act and the subsequent failure to act; he is liable only if the harm would not have occurred had he not undertaken the work." Restatement of Agency § 354, Comment a.

Thus in the case of an employee who has undertaken the job of inspecting and repairing portions of business premises which, if allowed to fall into disrepair, are likely to cause injury to business invitees: If the employee negligently fails to perform his duties, as a result of which foreseeable injury results to a business invitee, there is more here than mere nonfeasance in the sense of the good Samaritan case. The occupier has sought to keep the premises in safe condition and has charged the employee with the job of inspection and repair. The employee having affirmatively undertaken to perform the job has thereby diverted the employer from making other provision to assure the safety of the premises. In other words, the employee's intervention into the situation, his undertaking to inspect and repair, may put future business invitees in a potentially worse position, unless the employee either goes through with the performance of his job, or gives his employer timely notice of his refusal to perform. Because reliance has thus been induced by the employee, the law of torts imposes upon him an affirmative duty to business invitees to use care to perform his undertaking, so long as he allows the reliance to persist, and to the extent that a reasonable man in his situation would realize that the nonperformance of his duties of inspection and repair would be likely to subject a business invitee to bodily injuries, the risk of which presumably would have been eliminated by someone else had the employee not undertaken the job. Restatement of Agency §§ 354, 355. Appellant cites no Massachusetts cases to the contrary; and we are confident that the Massachusetts courts would hold their local law to be in accord with the modern view as expressed in the Restatement.

The judgment of the District Court is affirmed.