Dr. A. Palmer López, Plaintiff and Appellee, *v.* Eduardo Barreras and Transportation Authority of Puerto Rico, Defendants; Eduardo Barreras, Appellant.

No. 10526. Argued January 10, 1952.—Decided March 31, 1952.

*R. Rivera Zayas, G. Rivera Cestero,* and *Milton F. Rúa,* for ap-

pellant. *Guillermo S. Pierluisi* for appellee. *B. Meléndez García* and *Hernán S. Pesquera* for defendant.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a suit for damages by Dr. A. Palmer López against Eduardo Barreras and the Transportation Authority. After a trial on the merits, the district court entered a judgment in favor of the plaintiff against Barreras for $2,200, costs and $300 for attorney's fees and dismissed the complaint as to the Authority. Barreras has appealed from the judgment against him.

The facts as found by the district court are as follows: Dr. Palmer owned a small runabout boat. In September, 1948 he made a month-to-month lease with the Authority to keep it in a boathouse belonging to the Authority located at Isla Grande in San Juan. The lease was for a one-third portion of the boathouse. The Authority, without notifying Dr. Palmer who was still occupying part of the boathouse, rented the entire boathouse to Barreras, who proceeded to keep his large yacht therein. When Dr. Palmer told Barreras about his lease, Barreras gave his consent for Dr. Palmer to continue to keep his boat in the boathouse as a *lessee* of one-third thereof. The contract between Dr. Palmer and the Authority was never rescinded, and the Authority continued to accept the payment of rent from Dr. Palmer. In December, 1948, while both boats were in the boathouse, some high waves broke the moorings of the Barreras yacht, which thereupon collided with the Palmer boat and sunk it.

The district court entered judgment for Dr. Palmer against Barreras on the ground that the proximate cause of the accident was the negligence of the latter in not equipping his yacht with cables sufficiently strong to hold it fast under normal conditions. On appeal, the first assignment is that the lower court erred in not holding that the plaintiff

was barred from recovery as he voluntarily assumed the risk that the accident in question would occur.

The defense of voluntary assumption of risk has been developed from the idea expressed in the Latin maxim *volenti non fit injuria*, which means "That to which a person assents is not deemed in law an injury." A general statement of this doctrine is that "If one knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. [It] is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto." *Gover* v. *Central Vermont Ry. Co.*, 118 A. 874, 877 (Vt., 1922). To the same effect, *Echevarría* v. *Despiáu*, 72 P.R.R. 442, 447; *Landrum* v. *Roddy*, 12 N. W. 2d 82, 88 (Neb., 1943) ; Keeton, Personal Injuries Resulting From Open and Obvious Conditions, 100 U.Pa.L.Rev. 629 (March, 1952) ; Bohlen and Harper, Torts, p. 289; Prosser on Torts, p. 376 *et seq.;* Eldredge, Landlord's Tort Liability for Disrepair, 84 U.Pa.L.Rev. 467, 469–71; Restatement, Torts, Vol. IV, § 893, Vol. II, § 343.

We agree with the appellant that Dr. Palmer's own testimony makes it clear that he had knowledge of and comprehended the risk he was assuming. He testified that when he went to an official of the Authority after the lease to Barreras, "he foresaw what was going to happen"; that he "warned him of the condition of the cables"; and that "I explained to Mr. Holohan that this launch of Barreras was going to turn loose because the cables were rotten and it was going to sink my launch." Palmer also testified that "On several occasions I called to Barreras' attention the fact that this yacht was going to break the cables and it was going to turn loose and to destroy my launch...".

In spite of Dr. Palmer's testimony, we cannot agree that the defense of voluntary assumption of risk applies to the

facts of this case. As Keeton, *supra*, points out at p. 633, "one who voluntarily enters business property *without a right to do so save that derived from the occupier's consent* and encounters a condition thereon the danger of which he appreciated at the time is not entitled to recover for injuries accidentally resulting from the occupier's negligent conduct." (Italics ours.) The difficulty here is precisely that Dr. Palmer's occupancy of part of the boathouse was not predicated exclusively on consent therefor by Barreras. On the contrary, the lower court found that Dr. Palmer was in possession of one-third of the boathouse by virtue of a lease which was still in effect on the date of the accident. Under those circumstances, Dr. Palmer was in effect a co-tenant of Barreras. He therefore cannot be charged with voluntary assumption of risk when he was in fact exercising his legal right as a co-tenant without reference to any consent by Barreras. See *Pumarejo* v. *Martinó*, decided by per curiam opinion, May 4, 1950; § 1444, Civil Code, 1930 ed.; Keeton, *supra*, pp. 638–39, and footnote 31. We therefore hold that the said defense does not lie in this case.[1]

▆▆ The second assignment is that the lower court erred in not holding that the Authority was *solely* responsible for the accident because it rented the boathouse to Ba-

---

[1] In its findings of fact the lower court stated that "from the moment he [Palmer] talked to Barreras, he was converted *at least* into an invitee of Barreras, ...". (Italics ours.) For the reasons stated in the text of this opinion, if Dr. Palmer had been merely an invitee, the doctrine of voluntary assumption of risk would apply to him and he could not recover. But in view of the unambiguous finding of fact that Dr. Palmer was a co-tenant, we discard the superfluous statement of the lower court that he was "at least an invitee".

We think it appropriate to add that if Dr. Palmer had occupied part of the boathouse solely by virtue of the tolerance of Barreras, he would have been a licensee rather than an invitee. For the higher duty of care owed to an invitee as against a licensee, see *Tavárez* v. *San Juan Lodge*, 68 P.R.R. 681, 689–90; *United States* v. *Hull*, 195 F. 2d 64, (C. A. 1, March 19, 1952) ; Restatement, Torts, Vol. II, § § 330–32, 343, Comment *a*, pp. 939–40; Prosser on Torts, pp. 625–43; Eldredge, Landlord's Tort Liability for Disrepair, 84 U.Pa.L.Rev. 467, 470.

rreras without terminating in legal form its lease with Dr. Palmer. The question of whether the Authority was jointly liable with Barreras is not before us as there was no appeal from the judgment in favor of the Authority. However, we can scarcely hold that the Authority was *solely* responsible. It is true that the Authority acted improperly in leasing the same space to two people. But once Barreras acquiesced in considering Dr. Palmer as a co-tenant of the boathouse, the former could not thereafter transfer to the Authority all the blame for his own negligent conduct in failing to moor his boat adequately.

 The third assignment is that the lower court erred in holding that Barreras gave his consent for Dr. Palmer to continue to use the boathouse. The record contains sufficient evidence to sustain this finding. We are therefore not at liberty to disturb it.

The fourth assignment is that the lower court erred in holding that Dr. Palmer had been converted into an invitee of Barreras. For the reasons stated in footnote 1, it is unnecessary to discuss this error.

The fifth assignment is that the lower court erred in holding that the moorings of the Barreras yacht were not adequate to resist normal waves and that Barreras had therefore been negligent. The sixth assignment is that the district court erred in not holding that the damage to the Palmer boat was caused by an inevitable accident resulting from an Act of God. Both of these errors are predicated on an attack on the finding of fact of the lower court that the cables were not sufficient to hold the Barreras yacht fast under *normal* conditions. The record contains evidence sufficient to sustain this finding. We shall therefore not disturb it. *Cf. Camacho* v. *Cía Popular de Transporte*, 69 P.R.R. 675.

██ ██ The seventh assignment is that the lower court erred in holding that the Palmer boat was a total loss and was worth $2,200 at the date of the accident.

The argument of the appellant on this point is as follows:

"The only reference that Dr. Palmer López made to the sinking of his boat was that it had a hole which had been caused by one of the pipes of Barreras' yacht and that it was full of water and was destroyed from being thrown against the yacht and the wall. He answered thus upon being examined by his attorney. (Tr. of Ev., p. 17.) On cross-examination he stated that he raised his boat out of the water and that it had a hole about six inches in diameter and that he raised it in order to see whether it would stay afloat; that he lifted it to sea level and it sank again. That he left it there and when he returned in the afternoon it had sunk completely, and that two weeks later when he returned it had been taken away. The only testimony as to the condition of the boat appears on page 28, Tr. of Ev., and it is clear that it has no value or weight because it is wholly hearsay evidence. In other words, the only evidence introduced by Palmer, who has the burden of proof by a preponderance of the evidence, to prove his allegation of total loss, was evidence of a very weak nature, namely, his statement that on a certain day he took his brother-in-law, who is a mechanic to the site, and the latter told him that the boat was beyond repair and unserviceable. This brother-in-law, whose name is not even known, was not called to the witness stand nor did Palmer introduce any expert evidence as to the total loss of his boat.

"Against the testimony of Palmer, which was the sole evidence introduced, and we have seen its defects, is the testimony of expert Manuel Salas, who testified that on December 1948 he had the opportunity to examine Palmer's boat, which he has known since 1936, and which had a dent from a blow on the starboard side, at about the middle of the boat, and on the side it had a hole ten inches wide; that the motor was lost because it had not been dismantled, washed, and greased, immediately after being raised from the water; and that for $310, $150 for repairing the motor and $150 to install the motor in the boat, plus $10 for carpentry, the boat could have been put in good condition again. (Tr. of Ev., p. 95.) Furthermore, he testified that the value of the boat before the accident was at the most $600. (Tr. of Ev., p. 96.)

"The evidence in this case clearly shows that the lower court committed manifest error in ordering Barreras to pay Palmer $2,200, inasmuch as his boat could easily have been repaired

for $310 and that Palmer may not recover damages which, even if he were entitled to them, he had not minimized with due diligence. It is because of Palmer's negligence and apathy that the damages sustained by his boat exceeded $310. He alone is responsible for his own actions. This negligence is shown when upon meeting Barreras he told him 'I am no longer a boatman.' Subsequently, at page 105 of the Tr. of Ev., it is clearly shown that Palmer did nothing to minimize the damages and although he denied that he had merely waited to recover the damages, that was exactly what he did.

"To that effect see Palmer's testimony on page 105 of the Tr. of Ev., where he says:

" 'Q. What steps did you take to save your investment the date the boat sunk?

" 'A. I raised the boat to see in what condition the boat was and I saw the hole, so I left it there in the water supported by two cables and it seems that the pressure of the water made it sink again.

" 'Q. Then you forgot about your boat?

" 'A. *Yes, I forgot about my boat.*

" 'Q. You merely waited to be paid?

" 'A. No.' "

The appellee in his brief makes no detailed answer to this argument. He merely resorts to the general statement that the lower court weighed the conflict in the evidence. We agree with the appellant that the lower court committed manifest error in giving weight to the vague, indefinite and uncorroborated hearsay statement of an unidentified brother-in-law of the plaintiff as against the detailed statement of an expert who testified personally and was subjected to cross-examination. Under the circumstances we hold that the plaintiff must be charged with the responsibility for his failure to minimize the damages.

The judgment will be modified by reducing the damages to $310 and the attorney's fees to $100. As thus modified, the judgment will be affirmed.