Paul M. FORSMAN

v.

PENNSYLVANIA RAILROAD COMPANY, a Corporation

v.

JOHN F. CASEY COMPANY.

Nos. 13174, 13175.

United States Court of Appeals Third Circuit.

Argued May 13, 1960.

June 22, 1960.

Bruce R. Martin, Pittsburgh, Pa. (Pringle, Bredin, Martin, Pittsburgh, Pa., on the brief), for appellant.

Dennis C. Harrington, Pittsburgh, Pa. (McArdle, Harrington & McLaughlin, Pittsburgh, Pa., on the brief), for appellee.

Hamilton A. Robinson, Pittsburgh, Pa. (Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., on the brief), for third-party defendant.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this Federal Employers' Liability action plaintiff recovered a verdict against defendant, his railroad employer. The latter had sued John F. Casey Company as a third party defendant. In that action the jury decided in favor of the Casey concern. The railroad appeals from both judgments.

On April 16, 1955, plaintiff was employed by Pennsylvania Railroad Company as a car rider on its No. 4 eastbound hump (an artificial hill) in its yard at Conway, Pennsylvania. The hump was an aid used in classifying cars. A car rider would ride the car to be classified down the hump then walk back up a designated path to the top of the hump for another car. Just prior to his accident plaintiff had taken a car down, had come back to the foot of the hump and started walking up towards its top when, as he testified, "The ground just gave way in underneath me and I went down, down this hole. The one leg went down in further than the other side and it sort of made me snap like. * * * There wasn't no opening there at the time. It gave way, after stepping on it."

It is admitted that the accident occurred as plaintiff described it. The railroad brought in the Casey Company, as stated, blaming it for the injury to Mr. Forsman. In August 1954, the Casey

Company under contract with the railroad owner started constructing a tunnel for carrying conduits under the No. 4 hump. After this was completed the contractor backfilled the tunnel and was finished with its work October 13, 1954. At pretrial it was stated on behalf of the railroad "we intend to prove that this hole was right over where the Casey Company had done the digging" and that expert testimony would be produced to show that if the contractor "had met the plans and specifications the ground would not have collapsed."

In the main case the trial court outlined the doctrine of res ipsa loquitur and told the jury it would be applicable if that body found the accident area under the exclusive control of the railroad and plaintiff to be without fault. The latter was admitted by the railroad and the judge so advised the jury. Appellant argues that res ipsa loquitur was inapplicable as between plaintiff and defendant alone. It asserts that it controlled only some of the possible causative agencies and that the rest were the contractor's responsibility. It states "no proof was adduced by plaintiff to eliminate agencies or instrumentalities within the exclusive control of the Contractor as causes of the plaintiff's accident."

What appellant is doing, is reiterating, with no proof in the record, its original theory of the cause of plaintiff's mishap. It never did live up to its pretrial statements that the particular hole was right over where the contractor had dug and that it would present trial proof of the contractor's fault. The evidence is that more than six months prior to Forsman's fall, the Casey Company concluded its tunnel construction. Prior to any work on the tunnel at all the railroad engineering department approved the contractor's plans for it. The top of the tunnel was inspected every day to see that there was no sagging of the tracks. There was no indication during the construction that there were any cave-ins. In that period the railroad inspectors were there eight hours a day and perhaps over a thousand railroad cars went over that hump daily.

The railroad construction engineer who was present during the entire critical time for the railroad was asked and answered the following hypothetical question:

"Mr. Conner, from your experience, are you acquainted with the effect that would be produced if you created a hole or gap underneath the surface and left the surface unsupported? Strike that. If you created a gap or hole underneath the surface? A. Well, I wouldn't care to say. It would all depend upon the size of the opening and the type of ground overhead."

The railroad accepted the completed work on October 13, 1954, and as the court said: "That is not in dispute between the railroad and the Casey Company." While the distance from the suddenly appearing hole in the path to the tunnel varies with the witnesses, none of them put the tunnel at the hole. And there is not one word of testimony which attributes the hole to the tunnel. There is affirmative evidence that the ground on the south side of the hump was almost straight down "Quite a scramble to get up there" as one witness described it. Another witness told of rats burrowing underneath that hump and that the railroad on quite a number of occasions had exterminators come in and kill them. He said rats lived inside that hump. He also said that within the twelve years he worked there the railroad had raised the track several times "and put ballasts on the walkway there. That is crushed stone." Then asked, "And as a matter of fact, didn't they have to excavate on it or at one edge of the hump in order to put out a coal fire that was smouldering underneath the railroad?" He answered, "Yes, they did that."

At the close of the whole case there was a true res ipsa loquitur jury question presented as to the defendant railroad. The proofs indicated that the unusual accident involved would not have ordinarily occurred in the absence of negligence, that it took place on premises exclusively controlled by defendant and

that plaintiff was blameless. Weigand v. Pennsylvania R. Co., 3 Cir., 1959, 267 F.2d 281; Giannone v. United States Steel Corporation, 3 Cir., 1956, 238 F.2d 544.

Generally as to negligence the court charged the jury:

"* * * it becomes your duty to determine whether under all the evidence in the case this employee has established by the fair preponderance or the weight of all the credible evidence that the defendant railroad failed to apply reasonable care and caution to provide this employee a reasonably safe place in which to perform his work and duties assigned to him and if the accident resulted as a result of the acts of the railroad in not doing that."

"If the defendant failed to apply reasonable care and caution to provide this employee a reasonably safe place in which to perform his work and duties and the accident resulted therefrom, said action of the defendant would constitute negligence and entitle this plaintiff to recover such damages as he sustained as a result of the accident * * *."

In answer to interrogatories the jury found that the accident was wholly caused by failure of the railroad to provide plaintiff with a reasonably safe place to work; that the railroad's negligence was separate from the work performed by Casey; that the accident in whole or part did not result from the negligence of Casey or from the work performed by that Company.

 The railroad urges that plaintiff failed to develop jury questions as to specific negligence. That type of evidence is scant but it cannot be ignored. We have already referred to it but more detail regarding it is desirable. The railroad witness Thomas was assistant yard master on No. 4 hump. His office shanty was, according to him, about fifteen feet west of the accident. The rear of that shanty was built up on wooden stilts. He said the ground was out from under it. He did not recall a washout but "there was no earth behind it or under it, I should say." Verzolles, another hump employee, was asked, "Didn't they have to put timbers under them (the shanties on No. 4 hump) because the ground behind them washed away or disappeared, whether it washed away or not?" The answer was "Well partly." This was objected to and the court said: "I think the question would be proper, Mr. Harrington, if you would not use the phrase, 'washed away.' There is no evidence of that." The answer was not stricken and counsel asked another question. In his next answer the witness explained that the bracing under the cutter's shanty "practically set right in the dirt". This is the witness who told of the rats living inside the hump and that exterminators had come in quite a number of times and killed rats that were burrowing underneath that hump. And he told of the fire on the hump, within the twelve year period of his presence there, which made it necessary for the railroad to excavate on the hump or on one edge of it in order to put out a coal fire that was smouldering underneath the railroad. He saw smoke issuing from the sides of the hump and what is described as a "clam shell" come in and excavate in order for the workmen to get at the fire and put it out.

The above testimony isn't very much but this is a Federal Employers' Liability suit and the year is 1960. Under the Rogers doctrine we cannot hold that the district judge committed reversible error in giving the jury the question of whether the railroad was specifically negligent in respect to not furnishing Forsman a safe place to work. We cannot say with reason that the condition of the terrain of the artificially constructed hill as it was the day of the accident did not play "any part, even the slightest, in producing the injury * * * for which damages are sought." Rogers v. Missouri Pacific R. R. Co., 1957, 352 U.S. 500, 506–507, 77 S.Ct. 443, 448, 1 L.Ed.2d 493. And responsibility for that condition could be fairly ascribed to the defendant from the facts.

At the insistence of the defendant the court instructed the jury on the res ipsa loquitur doctrine as between it and the contractor. It stated that in order to decide in favor of the railroad and against Casey under that principle, it must be found that the accident was of a kind which ordinarily does not occur in the absence of someone's negligence; that the cause must have been within the sole control of the person charged and "That the accident must not have been due to any voluntary action or contribution on the part of the person who is complaining about what happened by doing or failing to do what should have been done by a reasonably careful and prudent person to look after his own welfare and safety." Appellant's complaint is against the quoted language.

The point is academic. We have already plainly stated that there was no evidence at this trial which linked the work performed by the contractor to Forsman's injury. We are not faced with the question of a contractor's responsibility for the negligent erection of a structure or creation of a condition after his work has been accepted by the possessor of the land. That situation never did arise in this trial. Therefore the railroad was not entitled to a res ipsa loquitur instruction against the contractor. It is noted that the jury's answers to the interrogatories make it very certain that the liability found against the railroad had no relation whatsoever to the contractor's work.

The refusal of the court to charge the defense request set out in the footnote was proper under the law and facts of the trial.[1] It need not be examined at length.

The judgment of the district court will be affirmed.

[1.] " * * * any possible negligence on the part of the Railroad in failing to discover or correct the condition negligently created by Casey, if any condition was negligently created by Casey, would not be separate and apart from the work performed under the contract within the meaning of the special interrogatory."