George W. FASSBINDER, Appellant,

v.

PENNSYLVANIA RAILROAD COMPANY, a corporation.

No. 13723.

United States Court of Appeals
Third Circuit.

Argued Feb. 20, 1962.

Reargued Sept. 21, 1962.

Reargued En Banc April 4, 1963.

Decided Sept. 16, 1963.

James E. McLaughlin, Pittsburgh, Pa. (McArdle, Harrington & McLaughlin, Pittsburgh, Pa., Charles Alan Wright, Austin, Tex., on the brief), for appellant.

Judd N. Poffinberger, Jr., Pittsburgh, Pa. (C. M. Grimstad, Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

The first trial in plaintiff's personal injury action under the Federal Employers' Liability Act,[1] resulted in a jury verdict of $11,750 in his favor. The trial judge granted a new trial which resulted in a jury verdict in the defendant's favor.

■ The instant appeal presented the critical issue as to whether reversible error was committed in granting a new trial; specifically, whether the trial judge abused his legal discretion in granting a new trial in that it was not "exercised in accordance with ascertainable legal standards" and was a usurpation of the function of the jury: Lind v. Schenley Industries, Inc., 278 F.2d 79 (3 Cir., 1960), cert. den. 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60.

Plaintiff was employed by the defendant as a conductor on one of its passenger trains. He was injured when, in the course of his employment, he tried to close a railroad coach door which stuck because of a defective mechanism—a gripping device used to retain tension on the hand brake of the coach which is called a "dog". Plaintiff's complaint alleged that the defendant had failed to provide him with a safe place to work.

At the trial under review the existence of the defective mechanism was not disputed by the defendant. No evidence was adduced by the plaintiff as to when or how the defect came into being. The trial judge instructed the jury that the defendant could not be found negligent unless it knew or should have known of the defective condition of the mechanism prior to the happening of the accident. Under the circumstances stated the jury's verdict in favor of the plaintiff and against the defendant must be regarded as a factual finding that the defendant had constructive notice of the existence of the defective condition.

The trial judge set aside the jury's verdict because or his conclusion that the evidence failed to establish defendant's "knowledge" of the defective mechanism "nor anything from which such knowledge could be inferred" and that "in the absence of proof of either actual or constructive notice, plaintiff has failed to establish his case and a new trial must be granted."[2]

We are of the opinion that the trial judge erred in not giving effect to the inference of negligence warranted by the

1. 35 Stat. 65, as amended, 45 U.S.C.A. § 51 et seq.

2. 193 F.Supp. 767, 769 (W.D.Pa.1961).

*res ispa loquitur* situation in the instant case, and as a consequence he usurped the fact-finding function of the jury when he granted a new trial.

█ The inference of negligence permissible under the *res ipsa loquitur* doctrine was certainly sufficient "to justify with reason" the jury's finding that the defendant was negligent. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). The vitality of Rogers has just been reaffirmed—Basham v. Pennsylvania Railroad Co., 372 U.S. 699, 83 S.Ct. 965, 10 L.Ed.2d 80 (1963).

█ That a *res ipsa loquitur* situation existed here was established by the undisputed evidence that the defendant had exclusive control of the railroad coach and its appurtenant mechanisms; that one of these mechanisms, "the dog", was defective and its condition was the precipitating cause of the accident which resulted in whatever injury was sustained by the plaintiff; that the accident was such as in the ordinary course of things would not have happened if the defendant had used proper care with respect to the "dog".

In Jesionowski v. Boston & Maine Railroad, 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416 (1947), where the Supreme Court, in specific terms, first made the doctrine of *res ipsa loquitur*, as stated in Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815 (1913), applicable to Federal Employers' Liability Act cases, it was said at page 456 of 329 U.S., at page 403 of 67 S.Ct., 91 L.Ed. 416:

"In San Juan Light [& Transit] Co. v. Requena, 224 U.S. 89, 98–99

[32 S.Ct. 399, 56 L.Ed. 680], this Court said: 'when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.' " and at page 457 of 329 U.S., at page 404 of 67 S.Ct., 91 L.Ed. 416:

"A conceptualistic interpretation of *res ipsa loquitur*. has never been used by this Court to reduce the jury's power to draw inferences from facts. Such an interpretation unduly narrows the doctrine as this Court has applied it.

"This Court said, in Sweeney v. Erving, 228 U.S. 233, 240 [33 S.Ct. 416, 57 L.Ed. 815] [1913], a decision which cut through the mass of verbiage built up around the doctrine of *res ipsa loquitur*, that '*res ipsa loquitur* means that the *facts of the occurrence warrant the inference of negligence,* not that they compel such an inference; that *they furnish circumstantial evidence of negligence where direct evidence of it may be lacking,* but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; *that they make a case to be decided by the jury,* not that they forestall the verdict.' " (emphasis supplied)[3]

3. The quoted excerpt from the Sweeney case was prefaced therein with this statement anent the *res ipsa loquitur* doctrine at 228 U.S. 238–239, 33 S.Ct. 417–418, 57 L.Ed. 815:

"The general rule in actions of negligence is that the mere proof of an 'accident' (using the word in the loose and popular sense) does not raise any presumption of negligence; but in the application of this rule, it is recognized that there is a class of cases where the circumstances of the occurrence that has

caused the injury are of a character to give ground for a reasonable inference that if due care had been employed, by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases it is said, *res ipsa loquitur*—the thing speaks for itself; that is to say, *if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may* fairly be found to have been occasioned by negligence." (emphasis supplied)

■ Here the defendant had exclusive control of the railroad coach and its appurtenant mechanisms; the accident was such as in the ordinary course of things would not have occurred if the defendant had used proper care with respect to the mechanism which precipitated the plaintiff's injury, and as a consequence it afforded reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the defendant's want of care. San Juan Light & Transit Company v. Requena, 224 U.S. 89, 32 S.Ct. 399, 56 L.Ed. 680 (1912).

As earlier stated, the defendant did not dispute the existence of the defective mechanism. Its defense testimony was *limited* to that of its physician who testified in substance that the plaintiff did not suffer any injuries. In short, there was no attempt by the defendant railroad to make "explanation or rebuttal" of the evidence with respect to the defective mechanism under its exclusive control as it was required to do under Jesionowski v. Boston & Maine Railroad, supra.

This Court has applied the doctrine of *res ipsa loquitur* in FELA cases time and again. We did so in Wiles v. New York, Chicago and St. Louis Railroad Company, 283 F.2d 328 (3 Cir., 1960), cert. den. 364 U.S. 900, 81 S.Ct. 232, 5 L.Ed.2d 193 where a defective jack used to raise a railroad hopper car slipped and threw its operator some 15 feet. Speaking for the Court, Chief Judge Biggs there said (283 F.2d pp. 330–331):

"It is clear that under the circumstances of this case Wiles ordinarily would be entitled to the inference of negligence afforded by the *res ipsa loquitur* doctrine since the jack and its internal mechanism were under the Railroad's exclusive control and the accident was not one which would ordinarily occur in the absence of negligence."

In Forsman v. Pennsylvania Railroad Company, 280 F.2d 315 (3 Cir., 1960) and Weigand v. Pennsylvania Railroad Company, 267 F.2d 281 (3 Cir., 1959), where Judge McLaughlin spoke for the Court, we held that the doctrine of *res ipsa loquitur* applied. In both cases a railroad employee was injured when ground on railroad property suddenly gave way. In Forsman it was said (280 F.2d pp. 317–318):

"At the close of the whole case there was a true res ipsa loquitur jury question presented as to the defendant railroad. The proofs indicated that the unusual accident involved would not have ordinarily occurred in the absence of negligence, that it took place on premises exclusively controlled by defendant and that plaintiff was blameless."

In Weigand, where the plaintiff, an employee of the defendant railroad, was injured when ground between intervening railroad tracks "suddenly gave way" it was said (267 F.2d p. 282):

"Without detailing them at length here, the facts embraced within them a res ipsa loquitur situation."

Again, in Sweeting v. Pennsylvania R. Co., 142 F.2d 611 (3 Cir., 1944), we held that the *res ipsa loquitur* doctrine was applicable where a railroad employee was electrically shocked to death in a locomotive cab. Speaking for the Court Judge McLaughlin there said (142 F.2d p. 613):

"If Sweeting was shocked within the cab, such accident, ordinarily speaking, would not have happened if those having the control of the locomotive and of the cab, used proper care and warrants the inference of negligence; *in other words, res ipsa loquitur*". (emphasis supplied)

In Lukon v. Pennsylvania R. Co., 131 F.2d 327 (3 Cir., 1942) we held the *res ipsa loquitur* doctrine applicable whether the evidence was to the effect that a railroad section hand was found dead with a fractured skull alongside tracks over which a locomotive had just passed; that coal in the tender of the locomotive was not trimmed; that lumps

of coal were found lying about the head of the section hand.[4]

The facts in the instant case are singularly analogous to the situation in Baltimore & O. R. Co. v. O'Neill, 211 F.2d 190 (6 Cir., 1954) where a railroad employee was injured when one side of a heavy steel ash pan which he was installing fell against him as a result of the breaking of one of two bolts holding a chain used in lifting the pan by hook and jack. There was no direct evidence of negligence on the part of the defendant railroad; there was no evidence as to what caused the bolt to break or that it was defective. Judgment on a jury verdict in favor of the plaintiff was reversed and a new trial ordered, on the theory that there was "no evidence of any kind in what way it [the bolt] was defective, or that it was not a hidden defect, or that the appellant [railroad] knew or should have known that it was defective." The Supreme Court reversed in a per curiam opinion sub nom, O'Neill v. Baltimore & Ohio Railroad Co., 348 U.S. 956, 75 S.Ct. 447, 99 L.Ed. 747 (1955), with directions to reinstate the judgment in favor of the plaintiff entered by the trial court.

And too see Shenker v. Baltimore & Ohio Railroad Company, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709.

There remains this to be said.

■ The mere circumstance that the plaintiff in the instant case failed to receive the benefit of a *res ipsa loquitur* doctrine instruction to the jury with respect to the permissible inference of negligence warranted by the facts as established by the undisputed proof of the existence of the defective mechanism cannot operate to deprive him of the fruits of a jury finding of defendant's negligence sans such an instruction.

Nor is the inexplicable failure of the plaintiff to *assert in terms*, here and be-

low, his right to the benefit of the application of the *res ipsa loquitur* doctrine, of any consequence inasmuch as the facts which established a *res ipsa loquitur* situation were presented to the jury.

■ "Res ipsa loquitur was in the case from the moment the complaint was filed under the general allegation of negligence" as was said in Weigand v. Pennsylvania Railroad Company, supra. Further, here, "Plaintiff's Pre-Trial Statement" specifically averred that "The defendant was negligent in permitting a broken dog to be on this car when it knew or should have known of the existence of the dog and failed to make proper repairs to it" the plaintiff's "Answer to Interrogatories" alleged the negligent existence of the "broken dog" as the cause of his injuries; plaintiff's Deposition, long prior to the trial, described in detail the nature of the defective mechanism as he observed it after the accident; and finally, the District Judge who presided at the "Pre-Trial Conference" noted that the plaintiff's case was based on the allegation that defendant was negligent in "permitting a broken dog on the car" and in failing "to make proper repairs".

■ The *res ipsa loquitur* doctrine is simply a rule of evidence and like any other rule of evidence it is brought into play where the situation presented makes it applicable. It does not have to be pleaded in the complaint or "noticed" by specific designation to the adverse party at pre-trial or at trial, since it is neither a cause of action nor a ground for recovery, nor an "issue".

In Jesionowski v. Boston & Maine Railroad, supra, 329 U.S. at page 454, 67 S.Ct. at page 402, 91 L.Ed. 416, the Supreme Court described the res ipsa loquitur doctrine as a *"trial rule* under which negligence may be inferred from unusual happenings growing out of condi-

---

4. The *res ipsa loquitur* doctrine was held applicable by Judge Ganey in Taylor v. Reading Co., 83 F.Supp. 804 (E.D.Pa. 1949) when a railroad employee was killed when a crane he was operating toppled over on its side.

See generally Annot. Res Ipsa Loquitur in Federal Employer's Liability Act Cases, 35 A.L.R.2d 475.

tions under a defendant's control." (emphasis supplied) [5]

In Johnson v. United States, 333 U.S. 46, pp. 48–49, 68 S.Ct. 391, 392–393, 92 L.Ed. 468 (1948) the doctrine was referred to as a "rule" with the further statement that "The *rule* deals only with permissible inferences from unexplained events." (emphasis supplied).

On the score of the application of the *res ipsa loquitur* doctrine in the instant case the following statement by Judge Magruder in United States v. Hull, 195 F.2d 64, 66 (1 Cir., 1952) may well be quoted:

"The use of the Latin phrase '*res ipsa loquitur*' in this connection may be unfortunate, as suggesting that some exotic doctrine is involved. It is nothing more than a case of circumstantial evidence, where plaintiff has proved enough 'to get to the jury', and where the inference of negligence, though not necessarily a required one, is a permissible one on the balance of probabilities. See Prosser on Torts § 43 (1941);

Sweeney v. Erving, 1913, 228 U.S. 233, 238–240, 33 S.Ct. 416, 57 L.Ed. 815." [6]

Significantly pertinent here is the following statement, in relevant part, in Jesionowski, 329 U.S. at page 458, 67 S.Ct. at page 404, 91 L.Ed. 416:

"It would run counter to common everyday experience to say that * * the jury was without authority to infer that either the negligent operation of the train or the negligent maintenance of the instrumentalities * * * was the cause of the derailment. It was uncontroverted that the railroad had exclusive control of both."

For the reasons stated the Judgment of the District Court entered in favor of defendant on June 27, 1961, pursuant to the jury's verdict at the second trial will be vacated; the Order of the District Court, dated May 1, 1961, granting defendant's Motion for a New Trial will be reversed and the cause remanded with directions to reinstate the Judgment of the District Court entered April 27, 1961,

---

5. "* * * res ipsa loquitur is a part of the law of evidence * * *." Alexander v. Inland Steel Company, 263 F.2d 314, 320 (8 Cir., 1958).

"'This rule [res ipsa loquitur] is merely one of evidence and is applicable only when the instrumentality causing the injury is under the control of the defendant and the accident is of such a character that in the ordinary course of events would not happen if those having control of it used due care.'" Siebrand v. Gossnell, 234 F.2d 81, 87 (9 Cir. 1956).

"It [res ipsa loquitur] is merely a rule of evidence * * *." Union Pacific Railroad Company v. Ward Transport Service, 230 F.2d 287, 289 (10 Cir., 1956).

"'The doctrine of res ipsa loquitur is a rule of circumstantial evidence which permits the inference of negligence to be drawn from the occurrence of an accident upon proof of certain facts.'" Ray v. United States, 228 F.2d 574, 581 (5 Cir., 1955), cert. den. 351 U.S. 968, 76 S.Ct. 1034, 100 L.Ed. 1487.

"The doctrine of res ipsa loquitur is a part of the law of evidence * * *." Coca-Cola Bottling Co. of Henderson v. Munn, 99 F.2d 190, 193 (4 Cir., 1938).

6. In United States v. Hull the plaintiff brought an action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. for injuries sustained when a post office window fell on her hand while she was sliding money across the counter. In her amended complaint it was alleged, with no attempt at further specification, that "by reason of the negligence of the defendant, its agents, servants or employees, a heavy movable window descended on her left hand with great force and violence". The trial judge (the cause was tried to the court) found in favor of the plaintiff on the amended complaint. In affirming, Judge Magruder stated in part (195 F.2d 66):

"The plaintiff needed only to satisfy the trier of the facts that the balance of probabilities was in her favor as to each element of her case. * * * The answer to this question involved an exercise of factual judgment, based on ordinary, everyday experience. It is our judgment that such an inference was a rational one in this case, and that the generalized inference of negligence drawn by the trial judge cannot be said to be 'clearly erroneous'."

in favor of the plaintiff and against the defendant in the sum of $11,750 with costs, pursuant to the jury's verdict on April 21, 1961.

McLAUGHLIN, Circuit Judge (dissenting).

The majority opinion offers a compendium of decisions dealing with some of the general principles of res ipsa loquitur with which there is no basic disagreement. It suggests no decisions with controlling facts comparable to the unique situation admittedly permeating the whole litigation before us. It calls for vacation of the judgment entered after the second trial as to which it states that the only issue there concerned was that of damages. Actually, that trial properly resulted in a general verdict in favor of the defendant. The opinion's next stop is to reverse the order following the first trial which granted the defendant's motion for a new trial. It then directs that the verdict and the judgment for the plaintiff be reinstated. In so doing, the opinion nimbly passes over the glaring fact that the doctrine or res ipsa loquitur upon which the reversal is entirely based was never presented, expressly or impliedly, in the pleadings, pretrial, trial, post trial or on appeal; was indeed disclaimed by plaintiff-appellee at the rearguments of this appeal.

There was no contention ever in this suit that plaintiff could not have asserted a res ipsa loquitur theory in connection with his action but we are dealing with a condition not a theory. And the unescapable condition here is that res ipsa loquitur was not, and down to this moment is not, any part of plaintiff's evidential proof or any part of this cause from its inception to the current opinion of this court. The majority grudgingly concedes that it was never before the jury but nevertheless announces the amazing interpretation of the verdict as based upon res ipsa loquitur "sans such an instruction". The majority refuses to face up to the record which plainly reveals the uncontradicted true trial situation detailed by the plaintiff to the court, jury and defense. The nub of it was that plaintiff undertook to show actual or constructive notice of the broken dog in the defendant and asserted that he had done so by evidence that the dog was broken at the time of the accident. That was not invocation of res ipsa loquitur, namely, that control of the dog by the defendant warranted an inference of negligence. And there was no misapprehension of the trial issue by the parties or the judge. No one concerned, including the plaintiff, had the slightest thought that the whole schema of the plaintiff would be eliminated from the case and that there would be substituted in its stead a new ground, formulated by this court following the third appellate argument. In reliance upon that new ground two verdicts and judgments in favor of the defendant are to be set aside and plaintiff's judgment, into which res ipsa loquitur never entered, is to be reinstated.

The hard effort to obtain the above named result refuses to be concerned with the palpable injustice of the decision. It refuses to follow a fundamental concept of the doctrine it calls upon. If there had ever been an inkling that res ipsa loquitur would be urged, the defense would have been specifically entitled as of right to affirmatively offer evidence to overcome inferences that the dog broke because it was defective, or lack of due care by the railroad, etc. That line of proof would stem directly from an issue of res ipsa loquitur being raised. In those circumstances, the question of whether the defense proof had overcome the res ipsa inference would be properly for the jury. But none of those elements was involved in the first trial or the second either for that matter. The defendant had no opportunity or cause to refute a non-existent charge which had not been made or even hinted at and of which the court and jury had no knowledge. It cannot be overemphasized that the referred to non-existent charge is the proposition at this time injected into the litigation by the majority opinion viz. that negligence in the defendant could be inferred from its control of the broken

dog, to which must be joined its unmentioned but indispensable corollary, that the inference could be overcome if defendant's explanation, if in evidence, was accepted as satisfactory.

It follows that the defendant has been deprived of its right to appear and defend itself in the after suit conceived by this court. A judgment is being entered on a view of the cause which never existed until the majority opinion. The sole excuse offered on behalf of that decision is that it all comes down to this—the field of our action is limited to either reinstatement of the judgment entered upon the jury's verdict at the first trial or the affirmance of the judgment in favor of the defendant entered pursuant to the jury's verdict at the second trial. The majority is of course proceeding in the utmost good faith but, even assuming the dilemma posed to be accurate, that alone is too precarious a foundation for, what seems to me, the grievous wrong being inflicted upon the appellee.

GANEY, Circuit Judge, joins in this dissent.